WILLIAM J. ANDREE ᴇᴛ ᴜx. *v.* THE EQUITABLE
TRUST COMPANY

[No. 72, September Term, 1980.]

*Decided October 15, 1980.*

The cause was argued before Gɪʟʙᴇʀᴛ, C. J., and Lowᴇ and
Mᴀsᴏɴ, JJ.

*Robert F. Kahoe, Jr.,* for appellants.

*K. Donald Proctor* and *Richard P. Kidwell,* with whom
were *Miles & Stockbridge* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The message of the Court of Appeals of Maryland, delivered to banking institutions and attaching creditors, through the medium of *Fairfax v. Savings Bank of Baltimore,* 175 Md. 136, 199 A. 872 (1938), was crystalline. In the *Fairfax* case, the Court held that in the absence of fraudulent conduct by a husband and a wife, a judgment creditor who has a claim against one spouse, but not both, may not attach a joint bank account, in trust for another, and subject to the order of either. The right to withdraw from the account, the Court said, is "a reserved personal right of each, and beyond the control of the other, and, therefore, whether it shall be exercised depends wholly upon the individual will of each severally motivated." 175 Md. at 144, 199 A. at 876.

The Court went on to state:

> "A creditor of one cannot make this election, nor compel the debtor to act. Nor may a valid trust, untainted by fraud, be ended at the instance of a subsequent creditor. If . . . [a creditor were at liberty to so do] the established right of the debtor . . . [and the spouse who is not a debtor] . . . will be swept aside without justification in principle or precedent."

In sum *Fairfax* forbids the creditor of one spouse from attaching a bank account held jointly by the debtor and spouse, in trust for one another, subject to the order of either, and payable upon death to the survivor.

The Equitable Trust Company (Equitable), the appellee in the matter now before us, chose to disregard *Fairfax* and to place the monies in the joint accounts [1] in "escrow . . . pending settlement of [an] attachment" laid in Equitable's hands by a judgment creditor of one of two spousal owners of the accounts.

---

1. While there was some question in the hearing court as to whether the pleadings properly phrased the manner in which the account was held, that issue is not raised on appeal, and we do not consider it.

The facts of this litigation are uncomplicated. The Aberdeen National Bank held a judgment against Marie I. Bonge as "endorser" and a person that we infer to be her former husband. Marie Bonge apparently subsequently married William J. Andree. The Andrees *jointly* held "a regular checking account," "a special checking account," and a "savings account." Mrs. Andree individually had a "special checking account."

The Aberdeen Bank caused a writ of attachment to be issued out of the District Court of Maryland for Harford County on the judgment it held against Marie Bonge Andree. The attachment instructed the judicial officer serving it to:

> "Lay the same in the hands of the following named garnishee(s):
> Equitable Trust Company Acct.
> 541-10-920 account of Marie Bonge Andree
> Aberdeen Main Branch, W. Bel Air Ave.
> Aberdeen, Md.   21001."

The "Writ of Attachment," signed by the Clerk of the District Court, was printed on the same form as the order for attachment. The writ contains the pertinent wording:

> "THEREFORE you [the judicial officer serving the writ] are hereby commanded to attach the lands and tenements, goods and chattels, rights and credits, of the Defendant(s) if they can be found in your bailiwick to the value of the debt, costs and charges set forth above, to be condemned by the District Court of Maryland for District 9 Harford County according to law and the Maryland District Rules, to and for the use of said Plaintiff(s)."

At the time of the attachment, Mrs. Andree's individual "special checking account" contained only $20.07.

Equitable, however, advised *both* Mr. and Mrs. Andree that it had placed the monies from *all* the accounts in which

Mrs. Andree had an interest in escrow. The letter from Equitable to the Andrees read in part:

> "We have been served with an Attachment On Judgment In The District Court Of Maryland For Harford County in favor of Aberdeen National Bank, in the amount of $3,197.68 and against Marie S. Bonge.
>
> . . .
>
> A total of $1,567.23 has been placed in our escrow account pending settlement of attachment, and any additional deposits made by you will be held up to the total amount of the attachment." [2]

The Andrees sued Equitable on a two-count Amended Declaration in the Circuit Court for Harford County claiming in the first count that the bank wrongfully dishonored checks drawn by the Andrees on their accounts, and besides the "great inconvenience, expense and worry" they sustained, the bank's action also caused them "severe and irreparable economic harm." The second count alleged conversion. The Andrees sought compensatory and punitive damages.

Equitable demurred to the Andrees' Amended Declaration asserting various technical pleading defects.[3] Of more importance, the bank relied upon the provision of Md. Ann. Code art. 11, § 103 (1976 Repl. Vol.), which provides:

> "No banking institution doing business in this State shall be required to recognize, or take any action with respect to, any claim to a deposit or to money or property in its hands or contained in a safe deposit box, adverse to the interests of any person, corporation or other legal entity, appearing on its records as entitled to receive from it such deposit, money or property or a part thereof, except that if there is served upon such banking

---

**2.** Although there is nothing about it in the record, we assume the Andrees did not make "any additional deposits" in any of the accounts.

**3.** See n. 1 *supra.*

institution a restraining order, injunction, attachment, garnishment, order to show cause, or other order, or decree, issued or entered by a court in this State in an action, to which the adverse claimant is a party, *involving a claim to the whole or a part of such deposit, money or property,* then such institution may, or to the extent required thereby shall, impound and withhold all or any part of such deposit, money or property, subject to further order of the court and without any liability on its part to anyone for so doing." (Emphasis supplied.)

The hearing judge agreed with Equitable and sustained the demurrer without leave to amend.

For the reasons hereinafter stated, we shall reverse and remand to the circuit court for further proceedings.

Equitable argued persuasively to the hearing judge that the statute, enacted by Laws 1951, ch. 79, permitted the bank to do exactly what it had done, namely, freeze the joint accounts. Equitable asserted that the statute is directed toward accounts in which the debtor is the sole or part owner. It follows then, the way Equitable reads the statute, that *Fairfax* has been rendered nugatory by the 1951 act.

We do not share Equitable's view of the effect of the statute. The statute does not purport to authorize that which *Fairfax* forbids. Rather, the statute does no more than *Fairfax* allows.

If Equitable were correct in its interpretation of the statute, then the monies of a non-debtor spouse could be attached and used by a creditor to pay the debts of the debtor spouse, whenever the spouses held jointly owned trust form accounts. We opine that jointly held trust form accounts would shortly become a thing of the past. The net result would be that one of the purposes of the account, the lack of necessity of probate in the event of the death of a spouse, would be lost. Moreover, a spouse might well find himself or herself forced to pay, via attachments, the debts of the other spouse, notwithstanding the fact that the debts were

incurred prior to the time of the marriage. We do not believe the General Assembly ever intended that result.

Equitable also contends that the wording of the writ of attachment compelled the bank to impound all the accounts in which Marie Bonge Andree had an interest. They asseverate that while the language of the instructions to the serving officer direct him to:

> "Lay the same in the hands of the following named garnishee(s):
> Equitable Trust Company Acct.
> 541-10-920 account of Marie Bonge Andree
> Aberdeen Main Branch, W. Bel Air Ave.
> Aberdeen, Md.   21001,"

the notice to the garnishee is phrased differently. The caveat to the person into whose hands the writ was laid warns that:

> "You are hereby notified to file in writing a defense in the above captioned case in the District Court of Maryland for <u>District 9</u> located at _____ _____ in <u>Harford County</u>, Maryland, pursuant to Maryland District Rule G52 within 30 days after service of the above writ, showing cause why the property or credits of the Defendant(s) in your hands should not be condemned. If you fail to file such defense within such time, the court may enter a judgment of condemnation against you." [4]

Equitable reads the quoted admonition as a direction from the court to the bank to hold the accounts or property in which the judgment debtor has any interest. That, however, is not what the writ commands. All that is required of the garnishee is that it freeze and confer assets of accounts that are legally attachable. Impounding accounts not legally attachable subjects the garnishee to suit by the improperly garnisheed depositor.

---

4. The underlined portions of the quote are blanks in the printed form. The words appearing over the underlining have been typed into the space allotted for that purpose.

Of course, in the instant case, the position taken by Equitable is somewhat academic. This is true because the instruction to the judicial officer that served the writ plainly appeared on the face of the writ. Those instructions directed the officer to attach a particular account, designated by account number, and in a particular person's name. It is difficult to imagine how the directions could have been more specific.

When Equitable froze the jointly held trust form accounts of Mr. and Mrs. Andree, they violated the holding of *Fairfax,* exceeded the protection afforded them by Md. Ann. Code art. 11, § 103, and subjected themselves to possible pecuniary damages to the Andrees.

The circuit court erred in sustaining the demurrer.

> *Order sustaining demurrer without leave to amend reversed.*
>
> *Case remanded for further proceedings.*
>
> *Costs to be paid by appellee.*